The defendant appeals from an order dated December 28, 2016, denying her motion to terminate and discharge her probation. Her motion claimed that she was unable to pay what remained of a $ 2,823.20 restitution order first imposed as a probation condition ten years earlier, in 2006. After reviewing the record, a Boston Municipal Court judge found that the defendant was financially able to pay, and denied the motion. We affirm.
Background. In 2006, the defendant pleaded guilty to six counts of larceny for stealing goods from two different Boston retailers. She was sentenced to eighteen months' probation on each count, to be served concurrently, and she was ordered to pay $ 1,500 in restitution to Saks Fifth Avenue (Saks), and $ 1,323.20 in restitution to the Elle Style Store (Elle).
The defendant did not pay the restitution in full, although she did pay some of it. Her probation was extended on multiple occasions, and she remained on probation in August of 2016, when the Supreme Judicial Court decided Commonwealth v. Henry, 475 Mass. 117 (2016). At that time the defendant still owed restitution to Saks of $ 1,065, and to Elle of $ 743.
In October of 2016, the defendant filed a "Motion to Terminate and Discharge Probation." Relying on the Henry decision, the defendant pointed out that she had been on probation for eight and one-half years beyond her original sentence, and went on to argue that she was "unable to make the [restitution] payments required." She noted that under Henry, 475 Mass. at 124, a judge may not extend probation for violation of a restitution order, where the violation is "due solely to an inability to pay." The defendant submitted an affidavit in support of her motion, which provided details of her financial condition.
The judge denied the motion on December 28, 2016, in a detailed written decision. In particular, the judge reviewed the documents regarding the defendant's then-current financial condition, and concluded that the defendant did have the ability to pay. The judge ordered the defendant to pay $ 200 per month on the balance of the restitution order, $ 1,808, which, had the defendant done so, would have discharged her restitution obligation nine months thereafter.[2]
Discussion. We first address the somewhat unusual procedural posture of this case. After the judge denied the motion to terminate probation in December of 2016 and after the defendant appealed to this court, the defendant appeared several times in the Boston Municipal Court (BMC) on probation status reviews. In March of 2018, a BMC judge entered an order terminating the defendant's probation. The Commonwealth did not file a timely appeal from that March 2018 termination order. As a result the relief that the defendant seeks through this appeal -- termination of her probation -- has already been afforded.
We nevertheless do not consider this appeal to be moot. Under the case law an appeal from an order finding a probation violation is not moot, even if probation has subsequently terminated, because the finding of a probation violation carries sufficient collateral consequences to merit review. See Commonwealth v. Bain, 93 Mass. App. Ct. 724, 725 n.2 (2018). While the order at issue does not expressly find a probation violation, such a finding is implicit in the judge's conclusion that the defendant had the ability to pay the restitution ordered, as well as in the judge's refusal to terminate probation.[3]
1. The defendant's ability to pay restitution. Turning to the merits of the judge's order, we discern no error in her conclusion that the defendant had the then-present ability to pay the restitution. The applicable standard is found in Henry, 475 Mass. at 126 :
"In determining the defendant's ability to pay, the judge must consider the financial resources of the defendant, including income and net assets, and the defendant's financial obligations, including the amount necessary to meet minimum basic human needs such as food, shelter, and clothing for the defendant and his or her dependents....
"The payment of restitution, like any court-imposed fee, should not cause a defendant substantial financial hardship.... Restitution payments that would deprive the defendant or his or her dependents of minimum basic human needs would cause substantial financial hardship. Where a defendant has been found indigent by the court for purposes of the appointment of counsel, a judge should consider carefully whether restitution can be ordered without causing substantial financial hardship."
We review the judge's decision for errors of law or other abuse of discretion. Commonwealth v. Buckley, 90 Mass. App. Ct. 177, 180 (2016). Here the judge properly followed the framework set forth in Henry. She considered the defendant's net biweekly income in 2016 of $ 1,169.98, which annualizes to over $ 30,000 per year, as well as the defendant's gross income in 2016 of approximately $ 37,000.[4] The judge noted that this amount of income was "well above the indigency standard for a single person." She also considered the expenses the defendant provided, including rent of $ 550 per month, or $ 6,600 per year. She noted in particular that the defendant listed cell phone costs of about $ 160 per month and DirectTV costs of about $ 133 per month, and observed that neither charge fell into the category of basic human needs, such as food, shelter, and clothing.[5]
The judge's conclusion was soundly based in the record. The defendant had a steady job, earning well above the indigency standard. She had no dependents. The $ 200 per month payment ordered by the judge was within the defendant's reach. Indeed, she could have achieved much of the required payment merely by finding a more economical cell phone plan.
We accordingly reject the defendant's argument that the judge erred in finding her able to pay. The defendant takes issue with minor details of the judge's reasoning, but never comes to grips with the fact that she (the defendant) had the burden to show that she was unable to pay, see Commonwealth v. Bruno-O'Leary, 94 Mass. App. Ct. 44, 48-49 (2018), and from what appears in the record the defendant's net earnings in 2016 were more than it cost to provide herself with her basic needs such as food, clothing, and shelter.
The defendant also reports that she has other debts, including student loans, credit cards, and even restitution payments owed as a result of her 2014 convictions in New York. These arguments are not persuasive. No details are provided regarding payment terms. The defendant never explains why repayment of those debts would render her unable to pay $ 200 per month for nine months, or why those debts should be paid before the defendant's 2006 restitution obligation.
2. Ex parte documents. The defendant also contends that the order must be overturned because the judge relied upon ex parte communications, in the form of documents provided to the judge by the probation department that were not part of the record, and that were not provided to the defendant. According to the defendant, these documents included documents from the defendant's probation records including prior notices of probation violations, the defendant's out-of-State record, and a 2016 "DOR Probation Check." The defendant claims prejudice because the judge allegedly relied on these documents to reach her decision.
We are not persuaded. We begin by noting that we do not have an adequate record to determine what documents were provided outside the record, and by whom. The transcript of the motion hearing, on October 11, 2016, does not show what documents were available to the judge at the time of the hearing. Ordinarily we would expect the defendant's prior probation record, at least, to be available to the judge and to the defendant. Similarly, the defendant's criminal record in New York may be publicly available, and in appropriate circumstances may be subject to judicial notice. See Jarosz v. Palmer, 436 Mass. 526, 530 (2002) (explaining that judges may take judicial notice of records of other courts).[6]
But we need not further debate whether the documents were improperly provided, because even if they were the defendant has shown no material prejudice. Under Henry the critical question was whether the defendant had the ability to pay the restitution. The judge resolved that question based upon facts -- the defendant's income and expenses -- that were contained in the defendant's own submissions, including her affidavit.[7] Under those circumstances the judge's order should not be disturbed.
Order dated December 28, 2016, affirmed.

The judge also discussed the defendant's history while on probation, which included pleading guilty in 2014 to two additional criminal theft charges in the State of New York. The ultimate basis for the judge's decision, however, was that the defendant had the present ability to pay the restitution.

In supplemental briefing requested by this court, the Commonwealth took the position that the appeal was not moot for a different reason: it argued that the BMC judge lacked jurisdiction to enter the March 2018 order terminating probation, because the BMC judge could not take up another request to terminate probation while the prior order, refusing to terminate probation, was on appeal.
We do not decide the jurisdictional question raised by the 2018 BMC order. The order was not appealed, and is not before us. We note, however, that in arguably analogous contexts we have held that trial courts have jurisdiction to modify previously issued orders based upon changed circumstances, even where the order they are modifying is then on appeal. Cf. Braun v. Braun, 68 Mass. App. Ct. 846, 853-854 (2007) (Probate and Family Court judge had jurisdiction to modify alimony order then on appeal; "suggested procedure" was to first ask appellate court for leave to do so). In the probation context in particular, we believe that the trial court would have jurisdiction to address the probation consequences of actions of the defendant that came to light while the appeal was pending -- for example, if while the appeal was pending the defendant violated probation by committing another crime.

There is some confusion in the record regarding the defendant's gross and net pay in 2016. The defendant at one point in her affidavit sets her net biweekly pay at $ 1,169.98, which annualizes to a net pay of $ 30,420. At another point, the affidavit states a gross pay in 2014 of $ 15,450.97
However, a pay stub submitted with the defendant's affidavit showed her actual income as of September 2016. Extrapolating that pay stub for the full year yields an annual gross income of $ 36,452. Gross income of $ 36,000 to $ 37,000 in 2016 is consistent with the $ 37,000 figure contained in the judge's decision, as well as the $ 1,169 biweekly net income figure from the defendant's affidavit.

The defendant claimed that the DirectTV payment was owed as part of her share of the rent, in which case it might qualify as a payment for shelter. The point is not material, however, given the evidence of the defendant's overall income and expenses.

The defendant infers, from the judge's citation to certain documents that are not in the appellate record, that the judge received those documents from the Commonwealth after the hearing. While the record does not establish this, we note that the Commonwealth does not deny that some documents may have been provided to the judge without notifying the defendant; if that occurred, the practice is improper. Any documents provided to the judge by the probation officers should also be made available contemporaneously to the defendant. And any ex parte communication, on substantive matters, is strictly prohibited. Olsson v. Waite, 373 Mass. 517, 533 (1977).

We find no prejudice from the judge's reference to the 2016 "DOR Probation Check" in connection with the defendant's income, given that the defendant's own exhibits showed substantially the same gross income.